**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROBERT HILL,** *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **ZAMBRIO & ASSOCIATES, LLC,** *et al.*, <br><br> **Defendants.** | Civil Action No. 19-1009 (ES) (CLW) <br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is defendants Zambrio & Associates, LLC., and Louis Zambrio's ("Zambrio") (collectively, "Defendants") motion for partial dismissal for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). (D.E. No. 10). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed R. Civ. P. 78(b); L. Civ. R. 78.1(b). As set forth below, the Court GRANTS Defendants' motion for partial dismissal.

**I.     Background**[1]

Plaintiffs Gregory Hall, Robert Hill, and One Particular Harbor, LLC ("OPH")[2] (collectively, "Plaintiffs") bring this action against Defendants, their former attorney and law firm, alleging claims for breach of contract, legal malpractice, and breach of fiduciary duty. (D.E. No. 1 ("Complaint" or "Compl.") ¶¶ 50–76).

---

[1]  The Court must accept Plaintiffs' well-pled factual allegations as true for purposes of resolving the pending motion to dismiss. *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

[2]  Hill is the chief executive officer of OPH. (Compl., Ex. 3 at 42 (CM/ECF Pagination)).

1

According to the Complaint, in September 2016, Hill and Hall began negotiating an agreement with Aaron Blackman, pursuant to which, Hill (through OPH)[3] and Hall would purchase interests in WageSecure, LLC ("WageSecure") from Venture Quest Partners, LLC ("VQ"). (*Id.* ¶¶ 20–22). An agreement was reached in October 2016, and Hill (through OPH) and Hall agreed to collectively pay to VQ $15,000 per month plus accrued interest beginning November 1, 2016. (*Id.* ¶ 22). In exchange for each $50,000 paid towards the total purchase price of $1,000,000, Hill (through OPH) and Hall each would acquire additional interests in WageSecure. (*Id.* ¶ 23).[4]

Plaintiffs allege that Hill (through OPH) and Hall retained Defendants to prepare the transactional documents memorializing the agreement. (*Id.* ¶ 26). During their discussions with Defendants, Hill (through OPH) and Hall requested that they be able to "at any time stop their monthly payments to VQ and forego the acquisition of further membership interests, in which case Hill (through OPH) and Hall would retain the membership interests already acquired, less a ten percent (10%) penalty . . . and VQ would retain the rest." (*Id.* ¶ 27). When Zambrio circulated drafts of the relevant agreements to Hill and Hall, Hill reiterated their desire to be able to "exit

---

[3] Plaintiffs attribute many of the actions described in the complaint to "Hill (through OPH)." The Court uses this same language to set out the facts but wonders whether "OPH (through Hill)" would more accurately describe which plaintiff took certain actions alleged in the Complaint. As further discussed in this Opinion, this confusion contributes to the Court's decision to grant Defendants' partial motion to dismiss.

[4] Although the present litigation arises out of the October 2016 transaction, Plaintiffs and VQ have a more detailed business history regarding their respective interests in WageSecure. In 2014, Plaintiffs Hill and Hall made an initial investment in WageSecure and each received a 7.5% membership. (Compl. ¶¶ 10–11). Simultaneously, Hall purchased an additional 2.5% interest in WageSecure from then majority member, VQ, which was owned and controlled by Blackman. (*Id.* ¶ 12). In late 2015, Hill and Hall each acquired another 7.5% of WageSecure. (*Id.* ¶ 13). By June 2016, "the relationship between Hill and Hall, on the one hand, and Blackman, on the other, soured significantly" (*id.* ¶ 14), and as a result, Hill and Hall entered an agreement with VQ, pursuant to which VQ would purchase from each of Hill and Hall 10% of their interests in WageSecure (*id.* ¶ 17). Apparently, OPH was not involved in this prior agreement. The agreement required VQ to make monthly payments commencing in September 2016, but VQ failed to make the first payment. (*Id.* ¶¶ 18 & 19). Because of the default, Hill and Hall began discussions with Blackman whereby Blackman (through VQ) would relinquish to Hill and Hall all but a small percentage of his equity interest in WageSecure. (*Id.* ¶ 20). Those discussions led to the negotiations of the October 2016 transaction.

with just a proportional part of the shares (less 10%) penalty." (*Id.* ¶ 29 & Ex. 2).[5] Zambrio responded by telling Hill and Hall that the documents stated that failure to pay would be a default, and that "[VQ's] attorney [would] probably not allow it to go any other way." (*Id.* ¶ 30 & Ex. 2). Hill responded, again reiterating that he and Hall wanted the non-payment provision included in the documents; Hall also responded stating "please do it." (*Id.* ¶¶ 31, 32 & Ex. 2). Zambrio then circulated revised documents, and Hill and Hall executed the prepared documents with VQ. (*Id.* ¶¶ 33 & 34). The October 2016 transaction documents attached to the Complaint list "Greg Hall" and "OPH, LLC" as the buyers (*id.*, Ex. 3 at 25 & 39 (CM/ECF Pagination)), although Hill signed the documents as the CEO of OPH (*id.* at 39, 42 & 53 (CM/ECF Pagination)).

Shortly after executing the documents, Hill and Hall realized that VQ's owner, Blackman, "was engaged in an array of misconduct detrimental to WageSecure and its members." (*Id.* ¶ 38). After Blackman refused to stop his misconduct, Hill (through OPH) and Hall ceased making their monthly payments to VQ, believing they were at liberty to do so. (*Id.* ¶¶ 39–40). Blackman and VQ then "took the offensive and declared the October 2016 [n]otes and [p]ledges in default and demanded that Hill and Hall each repay the full balance of their respective [n]otes." (*Id.* ¶ 42). After discussing with Defendants, Hill and Hall realized that, in the event of non-payment, the October 2016 transaction documents gave VQ the revisionary right to receive the unacquired interests plus a 10% penalty, and the right to hold Hill (through OPH) and Hall liable for the unpaid balances of their notes. (*Id.* ¶ 43). In other words, Hill and Hall learned that the documents prepared by Defendants did not provide for the right to stop payment at any time as they had requested. (*Id.* ¶ 44).

---

[5] Plaintiffs attach the relevant e-mail exchanges and the October 2016 transaction documents as exhibits to their Complaint, and the Court considers them as "document[s] integral to or explicitly relied upon in the complaint." *See, e.g.*, *Sunshine v. Reassure Am. Life Ins. Co.*, 515 F. App'x 140, 143 (3d Cir. 2013) (emphasis deleted).

3

The foregoing events resulted in "several months of hotly contested litigation in both New York and Pennsylvania, in which Hill (through OPH) and Hall sought to have [the 2016 transaction documents] reformed or, in the alternative, declared null and void." (*Id.* ¶ 45). According to the Complaint, Hill and Hall ultimately settled their disputes with Blackman. (*Id.* ¶¶ 45 & 46). Thereafter, Hill, Hall, and OPH filed the instant Complaint against the Defendants.

Defendants now move for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Hill lacks standing to assert any claim against Defendants because he was not a party to the underlying transaction giving rise to the claims, and because he has not alleged individualized injury. (D.E. Nos. 10 & 10-2 ("Def. Mov. Br.") at 3).

## II.     Legal Standard

Standing is essential to satisfy the Constitution's Article III, Section 2 "case or controversy requirement." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009). Thus, "[a] motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). "A district court has to first determine, however, whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Id.* Because Defendants filed their motion to dismiss before they filed any answer to the Complaint or otherwise presented competing facts, "[their] motion [is] therefore, by definition, a facial attack." *Id.* at 358; *see also Askew v. Church of the Lord Jesus Christ*, 684 F.3d 413, 417 (3d Cir. 2012) ("As the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial."). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Aichele*, 757 F.3d at 358 (internal

4

quotation marks omitted). "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Id*.

## III. Discussion

### A. Subject Matter Jurisdiction

As a preliminary matter, "[i]t is fundamental that federal courts must have subject matter jurisdiction before reaching the merits of a case," *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018), and district courts have an independent obligation to assess jurisdiction in the cases before it. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). "[J]urisdiction based on diversity of citizenship requires that opposing parties be citizens of diverse states." *GBForefront,* 888 F.3d 29 at 34. To demonstrate that a court has subject matter jurisdiction, a plaintiff "must specifically allege each party's citizenship." *Okechuku v. Sharp Mgmt.*, 522 B.R. 762, 765 (D.N.J. 2014). For parties registered as limited liability companies ("LLCs"), a plaintiff must allege the citizenship of each of the LLC members in the complaint so that the court can properly evaluate whether diversity of citizenship exists. *See Zambelli*, 592 F.3d at 420.

Here, Plaintiffs allege that diversity jurisdiction exists "because Plaintiffs, Hill, Hall and OPH, are citizens of Pennsylvania, South Carolina and Delaware, respectively, and Defendants are citizens of the State of New Jersey and the matter in controversy exceeds $75,000, exclusive of interest and cost." (Compl. ¶ 8). Although not raised by the Defendants, the Court notes that Plaintiffs fail to plead the citizenship of each member of OPH, as is required for LLCs. *See Zambelli*, 592 F.3d at 420. Accordingly, the Court must dismiss the entire complaint for failure to adequately plead diversity jurisdiction. Any amended complaint filed in response to this Opinion

shall sufficiently allege that all members of OPH are diverse from Defendants, or that OPH is the sole member of the limited liability company.

**B. Standing**

Although the entire Complaint may be dismissed for failure to adequately plead diversity jurisdiction, in the interest of judicial economy and efficiency, the Court also addresses Defendants' motion for partial dismissal for lack of standing. Defendants argue that dismissal of Hill's claims is warranted because Hill lacks standing to bring "any cause of action"[6] against Defendants. (Def. Mov. Br. at 3).

On a motion to dismiss for lack of standing, the plaintiff bears the burden of establishing (i) an injury in fact—"an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (ii) "a causal connection between the injury and the conduct complained of;" and (iii) that a favorable decision will likely redress the plaintiff's injury. *Ballentine v. U.S.*, 486 F.3d 806, 810 & 814 (3d. Cir. 2007). Moreover, a corporate officer of a company must allege injury that is distinct from the corporation's and may not use any alleged injury to the corporation as his or her own injury. *See Meade v. Kiddie Acad. Domestic Franchising*, 501 F. App'x 106, 108 (3d Cir. 2012); *Borkowski v. Fraternal Order of Police, Phila. Lodge No. 5*, 155 F.R.D. 105, 113 (E.D. Pa. 2012) (collecting cases). Here, Defendants argue that these requirements are not met because OPH, not Hill, was a party to the underlying transaction, and Hill did not suffer any injury that is separate and distinct from the injuries to OPH. (Def. Mov. Br. at 3).

---

[6] Plaintiffs interpret Defendants' motion as seeking to dismiss only Hill's malpractice claim against Defendants. (D.E. No. 11 ("Pl. Opp. Br.") at 7). Although at times Defendants' arguments are focused on Hill's malpractice claim (*see, e.g.*, Def. Mov. Br. at 5), the Court interprets the motion as seeking dismissal of all of Hill's claims against the Defendants. (*See, e.g.*, *id.* at 3 & 7).

The Court agrees with Defendants that the allegations in the Complaint related to the injuries suffered by Hill and OPH are insufficient to establish that Hill has standing. To start, nearly all of the facts describing the October 2016 transaction indicate that Hill was acting "through OPH." (*See, e.g.*, Compl. ¶¶ 22–45). Those same facts seem to indicate that it was OPH, not Hill, who entered the agreement with VQ (*id.* ¶ 22), hired the Defendants (*id.* ¶ 26), stopped making payments on the notes (*id.* ¶ 40), would be held liable for the unpaid balance of the notes (*id.* ¶ 43), and who sought to have the notes reformed or declared null and void (*id.* ¶ 45). Moreover, Plaintiffs allege that they were damaged by:

> 1) having to purchase greater interests in WageSecure than they otherwise would have and having to do so for a price far in excess of the value of the interests; 2) having to retain and pay counsel to litigate the disputes with Blackman; 3) having to pay Blackman to settle the disputes; and 4) payments to Defendants for legal work that was substandard and not in accordance with the specific instructions given by Plaintiffs.

(*Id.* ¶ 49). However, again, the facts relevant to these alleged injuries seem to suggest that these injuries were suffered by OPH, and not by Hill. (*See, e.g.*, *id.* ¶¶ 22, 26, 40, 43 & 45).

The only alleged injury that is possibly attributed to Hill personally is that, pursuant to the settlement agreement, "Hill and Hall agreed to pay Blackman $850,000." (*Id.* ¶ 46). But because all of the other allegations in the Complaint seem to indicate that OPH, not Hill, was a party to the underlying transaction and was therefore on the hook for the unpaid balances, the Court is left with doubts about how exactly Hill individually could have been injured. To the extent Hill claims that he personally was held liable for OPH's actions, there are simply not enough facts alleged in the Complaint to support that assertion.[7] *See Meade*, 501 F. App'x at 108 (affirming district court

---

[7] In their opposition brief, Plaintiffs state a bit more clearly that Hill (individually) was a party to the underlying lawsuits and incurred legal fees and costs, "including a portion of the payment made to settle the underlying matters." (Pl. Opp. Br. at 8–9). But when looking at the Complaint as a whole, the Court remains confused as to how and why, based on the conduct alleged, Hill would have injuries separate and apart from OPH's injuries, since it was OPH that hired the Defendants, entered into the agreement, and stopped making the required payments.

decision that the president of a company had no standing to sue for false and misleading statements made in connection with a franchise agreement, where the company, not the president, was the party to the agreement). Accordingly, the Court concludes that Hill's claims must be dismissed for lack of standing. To the extent Hill can plead facts to show that he has an injury separate from OPH's injury, he is granted leave to amend the pleading. *See Fenwick v. Dukhman*, No. 13-4359, 2014 WL 1788978, at *4 (D.N.J. Apr. 29, 2014).

## IV. Conclusion

Because the Court finds that the Complaint does not adequately set forth a basis for diversity jurisdiction, the Complaint is dismissed in its entirety; additionally, for the reasons discussed herein, Hill's claims are also dismissed for lack of standing. An appropriate Order accompanies this Opinion.

s/ *Esther Salas*  
**Esther Salas, U.S.D.J.**